**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **CHRISTIAN MIRON,** | : | |
| **PLAINTIFF,** | : | |
| | : | **CIVIL ACTION NO.** |
| | : | **3:11 CV 446 (VLB)** |
| **v.** | : | |
| | : | |
| **TOWN OF STRATFORD,** | : | |
| **STRATFORD POLICE DEPARTMENT,** | : | |
| **ORLANDO SOTO, individually and** | : | |
| **officially, JOSPEH MCNEIL,** | : | |
| **officially and individually, AND** | : | |
| **SHAWN FARMER, individually and** | : | |
| **officially,** | : | |
| **DEFENDANTS.** | : | **July 24, 2012** |

### MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

Before the Court are various motions to dismiss filed by Defendants Orlando Soto ("Soto"), Joseph McNeil ("McNeil"), Shawn Farmer ("Farmer"), and the Town of Stratford, including the Stratford Police Department (collectively referred to as the "Town"). The Plaintiff, Christian Miron ("Miron") has alleged a total of thirty counts against Defendants, including both common law state claims and constitutional violations. In their official capacities, Soto and McNeil move to dismiss Miron's claims of deprivation of privacy rights, deprivation of equal protection and deprivation of freedom of association under § 1983 and conspiracy in violation of § 1985.[1] In their individual capacities, Soto, McNeil and Farmer move to dismiss Miron's claims of deprivation of privacy rights,

---

1 For Soto, these are Counts 1, 5, 9 and 13. For McNeil these are Counts 2, 6, 10 and 14.

deprivation of equal protection and deprivation of freedom of association under §
1983 and conspiracy in violation of § 1985.[2]  Additionally, in their individual
capacities, Soto and Farmer move to dismiss civil conspiracy under common
law.[3]  The Town moves to dismiss all § 1983 claims for deprivation of privacy
rights, deprivation of equal protection and deprivation of freedom of association.[4]

I.   Factual Background

Defendants Soto, McNeil and Farmer are police officers employed as a
Lieutenant, Captain and Sergeant, respectively, by the Town.  [Dkt #138, Second
Amended Complaint ("Compl."), ¶¶ 9-11].  Defendants McNeil and Farmer serve
as the vice president and president of the local police union, respectively.  *Id.* at ¶
10-11.  The local police union opposed Mayor James Miron's actions regarding
the police department, including his choice for Chief of Police.  *Id.* at ¶ 17.  James
Miron is the Plaintiff's brother.  *Id.* at ¶ 16.

Around October, 2007, Miron applied to be a police officer with the Town.
*Id.* at ¶ 18.  Miron alleges that he passed all the required examinations and was
evaluated by a psychologist, who recommended him to be hired.  *Id.* at ¶¶ 19-20.
In March, 2008, Miron reports that the Town verbally extended him an offer of
employment conditioned upon his placement with the Connecticut Police
Academy.  [Dkt. #138, ¶ 21].  This was later confirmed by letter on April 18, 2008.
*Id.*  Miron alleges that his background report, including his psychological

---

2 For Soto, these are Counts 1, 5, 9 and 13.  For McNeil these are Counts 2, 6, 10
and 14.  For Farmer these are Counts 3, 7, 11 and 15.

3 For Soto, this is Count 26.  For Farmer, this is Count 27.

4 These are Counts 4, 8 and 12 respectively.

evaluation, was stored electronically by the Stratford Police Department and was protected by a computer system to prevent unauthorized access. *Id.* at ¶ 22. Miron contends that his background report contained the results of a confidential psychological evaluation and personal questions relating to his social, financial, medical and family history. *Id.* at ¶ 23. Miron felt he had a reasonable expectation of privacy regarding this report. *Id.* at ¶ 24.

Miron asserts that around March 25, 2008, Soto unlocked and accessed Miron's report on the computer, wrote down the access code, and gave the code to Farmer, all without authorization. [Dkt. #138, ¶ 26]. Miron asserts that Farmer then accessed the report on the computer and looked through it with Soto and an unnamed police officer. *Id.* at ¶¶ 27-28. Miron further asserts that Farmer then went into McNeil's office and returned back to the computer shortly thereafter. *Id.* at ¶ 29. Mirron contends that McNeil then accessed Miron's report and printed a copy of it. *Id.* at ¶ 30. Miron claims that the Defendants did not access the reports of any other candidates for the police department. *Id.* at ¶ 34. Miron alleges that before the end of March, 2008, Farmer and/or McNeil had mailed the report to the media and members of the Town Council. *Id.* at ¶ 35. Michael Henrick, Chairman of the Town Council and political opponent to Miron's brother, James Miron, discussed the contents of the report at the Town Council's public meetings and with members of the media. [Dkt. #138, ¶¶ 15-16, 37-39]. Miron asserts that as a result of the publicity, he was not placed in the Connecticut Police Academy and ultimately was not hired by the Town. *Id.* at ¶¶ 40-41.

An investigation was conducted into McNeil, Soto[5] and Farmer's conduct, resulting in a report concluding that McNeil had accessed and released Miron's report without authorization.  *Id.* at ¶ 42.  Miron contends that this conduct was in violation of Town of Stratford Policy No. C014 and Stratford Police Department Policy No. P9411110, which speak to confidentiality and the procedure for obtaining confidential information.  *Id.* at ¶ 43.  Miron asserts that there were no Town policies in place specifically addressing the protection of background reports of police candidates.  *Id.* at ¶ 44.  Lastly, Miron asserts that although McNeil and Soto were initially suspended from duty, they were "welcome[d] . . . back to work" publicly by Police Chief Buturla in January, 2011, with full seniority rights, restoration of rank and reimbursement of all wages and benefits lost.  *Id.* at ¶ 47-48.

## II. <u>Legal Standard</u>

" 'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 20120)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads

---

5 The Complaint fails to allege that Soto's conduct was investigated, but the subsequent paragraphs, which discuss the results and consequences of the investigation, include Soto.  Thus, the Court will construe the complaint to allege that Soto's conduct was in fact, also investigated.

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949-50). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

III. <u>Analysis</u>

A.   <u>The Town's Liability under Counts 4, 8 and 12</u>

Pursuant to 42 U.S.C. §1983, Plaintiff alleges that the Town deprived him of his right to privacy, his right to equal protection, and his freedom of association. In order for a municipality to be held liable under § 1983, a plaintiff must show that the "municipality violated a federal right through (1) municipal policy, (2)

municipal custom or practice, or (3) the decision of a municipal policymaker with final policymaking authority." *Zherka v. DiFiore*, 412 Fed.Appx. 345, 348 (2d Cir. 2011) (relying on *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  It is not sufficient to allege conduct attributable to the municipality, the plaintiff must demonstrate that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  *Id.* (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)) (internal quotations omitted) (emphasis in original).

The Plaintiff does not allege directly that the existence of a policy, custom, practice or decision by a final policymaker caused the defendant officers' conduct.  Instead, he relies on a theory of inaction and deliberate indifference. "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty Am. V. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)(internal quotations omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 396 (1989) (holding *Monell* liability is established if a city is put on notice that a particular omission will result in a deprivation of constitutional rights and deliberately chooses not to act).

The deliberate indifference standard is a "stringent standard of fault." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (citing *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011)) (internal quotations omitted).  Deliberate indifference can be shown if there is an obvious need for better supervision or

training to avoid risks of constitutional violation, but there were no actions taken to address such risks. *Id.*

Although the Plaintiff attempts, through two distinct theories, to demonstrate that the Town was informed of an "obvious need," to train its employees regarding individual privacy rights, he has failed to allege sufficient facts to form a plausible § 1983 claim against a municipality. First, Plaintiff claims that the Town was put on notice of this need through the "existence of a legal prohibition against disclosure." [Dkt. #138, Compl., ¶ 49]. Specifically, the Plaintiff vaguely references Town of Stratford Policy No. C014 and Stratford Police Department Policy No. P9411110, as town policies which prohibited the alleged conduct at hand. *Id.* at ¶ 43. Policy No. C014 identifies a violation for "failing to maintain proper confidentiality." *Id.* Policy No. P9411110 sets forth a violation for failure to "properly request copies of [the report] through proper administrative channels and making copies of [the report] for unlawful purposes." *Id.*

However, in a conspicuously contradictory fashion, the Plaintiff also alleges that "[t]here were no Town policies specifically targeting the protection of and prohibiting the unauthorized access and disclosure of candidates' confidential background reports which were generated for the purposes of their potential employment with the Town." [*Id.* at ¶ 44]. Construing these two paragraphs as a whole, perhaps Policy No. P9411110 specifies general procedures for authorizing access to confidential information and obtaining releases to disseminate that information, and does not specifically address

candidates' background reports.  The Court need not speculate on the exact details of the "legal prohibition" that put the Town on notice, because this line of argument is self-defeating.  The Plaintiff claims that the Town's implementation of a "legal prohibition," whatever it may be, puts it on notice of the potential risk of a constitutional violation.  *Id.* at ¶ 49.  However, the very act of implementing this "legal prohibition" shows that the Town is not in fact, deliberately indifferent to this risk.

Second, Plaintiff attempts to demonstrate the Town's awareness of an "obvious need" to train its police officers about individual privacy rights by asserting that "[o]n at least one other previous occasion, a copy of a candidate's background had been obtained by persons without authorization and it had been circulated about the department."  *Id.* at ¶ 45.  First, the Court notes that this hypothetical scenario differs materially from the Plaintiff's alleged circumstances as it lacks the element of public disclosure, which is the crux of the conduct of which the Plaintiff complains.  Absent any allegation that this prior incident resulted in public disclosure of private information, the Court fails to understand how this incident could have put the Town on notice of the potential danger of constitutional violations of privacy rights. Further, the vague conjectural nature of this assertion falls far short of the pleading standard set forth in Iqbal requiring particularized factual allegations giving rise to a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 (requiring that a plaintiff plead sufficient factual content to enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged," beyond mere "naked assertions devoid of further

factual enhancement"). Moreover, a single incident on its own, even if sufficiently particularized, is insufficient to allege the existence of an obvious need. *See Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) ("An obvious need may be demonstrated through proof of *repeated* complaints of *civil rights violations*.") (emphasis added).

Assuming *arguendo* that the Plaintiff has alleged sufficient facts to show that the Town was on notice and that there was an "obvious need" to take action, the Plaintiff fails to plausibly allege that the Town's supervision or training programs were inadequate. The Plaintiff generally suggests that the Town could have provided training for its police officers specifically informing them of the prohibition of "unauthorized access and disclosure of confidential background reports and identifying penalties for violations as a deterrent." [*See* Dkt #138, Compl., ¶ 51-56]. Plaintiff has failed to identify specific deficiencies in either of the two policies currently in place, and merely argues generally that the constitutional violations he purports to have suffered through the deprivation of his privacy rights could have been avoided had more specific policies been enacted *specifically* prohibiting the unauthorized access and distribution of the *particular* type of private information which he alleges was wrongfully accessed and distributed by the Defendants in this case. Recognizing that it would be impossible for the Town to speculate as to all possible violations of privacy rights and provide specific policies to prohibit each such violation, this conclusory assertion that the two policies in place were inadequate to protect against violations of individual privacy rights fails to allege the level of culpability

requisite to pursue a claim of municipal liability. *See Cash v. County of Erie*, 654 F.3d 324, 334 (instructing that the operative inquiry in a claim of deliberate indifference is whether "the policymaker's inaction was the result of 'conscious choice' and not 'mere negligence.'") (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004)).

Where the Plaintiff's allegations fall far short of alleging a plausible claim of municipal liability, Defendants' motion to dismiss Counts 4, 8 and 12 against the Town are GRANTED.

> **B.**   Soto, McNeil and Farmer's Liability in their Individual Capacities under Counts 1, 5, 9, 13 and 26, Counts 2, 6, 10 and 14 and Counts 3, 7, 11, 15, and 27, respectively

Counts 1 through 3, 5 through 7, 9 through 11, 13 through 15, and 26 and 27 allege a host of claims raised pursuant to 42 U.S.C. §1983. Specifically, Counts 1, 2 and 3 allege a deprivation of privacy rights under § 1983. Counts 5, 6 and 7 allege a deprivation of equal protection under § 1983. Counts 9, 10 and 11 allege a deprivation of freedom of association under § 1983. Counts 13, 14 and 15 allege a conspiracy in violation of § 1985. Counts 26 and 27 allege a civil conspiracy. As the Complaint relies on the same set of facts for all claims raised pursuant to §1983 against the three defendants, failing to set forth facts distinct to each Defendant, the Court will address each substantive §1983 claim together and will adopt the same reasoning for each defendant.

> **1.**   Color of State Law

As a preliminary issue, it is well established that a private party may only be held liable under § 1983 when acting under color of state law. *Bhatia v. Yale School of Medicine*, 347 Fed. Appx. 663, 664-65 (2d Cir. 2009). "Private parties are generally not amenable to suit under §1983, because they are not state actors, although they may be liable where 'there is a sufficiently close nexus between the State and the challenged action of the [private party] so that the action of the latter may be fairly treated as that of the State itself'. . ." *Id.*

"The Supreme Court has broadly interpreted the color of law requirement, concluding that '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.'" *US v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999) (citing *US v. Classic*, 313 U.S. 299, 326 (1941)).  While "acts of officers in the ambit of their personal pursuits are plainly excluded," there is no bright line test for determining what a personal pursuit includes.  *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994).  Police officers act under color of law if their conduct "invokes the real or apparent power of the police department" or the officer is performing "duties prescribed generally for police officers."  *Id.*  The  color of law requirement is also met if the official "gains access to the victim in the course of official duty" or if their "official power made the commission of a constitutional wrong possible, even though the official committed abusive acts *for personal reasons far removed from the scope of official duties.*" *United States v. Giordano*, 442 F.3d 30, 44 (2d Cir. 2006) (emphasis added).

The threshold for abuse of official power is extremely low.  In the extraordinary case of *Monsky v. Moraghan*, the Second Circuit declined to dismiss a complaint for failure to sufficiently plead conduct under color of state law when a judge was alleged to have allowed his dog to approach and "aggressively nuzzle" a litigant in his office.  127 F.3d 243, 244 (2d Cir. 1997).  The Court found color of law because the dog was allowed to remain in the judge's office because of his position of authority with the courthouse as a judicial official who was "known to, and deferred to, by the personnel of the office."  *Id.* at 246. The Ninth Circuit, when presented with a factual scenario strikingly similar to the current case, found that a state employee who accessed confidential information through a government-owned computer database acted under color of state law. *See McDade v. West*, 223 F.3d 1135 (9th Cir. 2000). Although the Ninth Circuit recognized that the employee may have been motivated by private goals, the Court held that she was acting under color of state law because she was empowered to access the database as part of the regular course of her duties, relied upon her state-authorized passcode to enter the database, and therefore committed an act related to her official duties. *See id.*

As the facts of the instant case are closely analogous to the facts of *McDade*, it is apparent that the Plaintiff has alleged sufficient facts to show that Defendants Soto, McNeil and Farmer were acting under the color of state law in accessing and distributing Plaintiff's background report.  The Defendants could only have gained access to Plaintiff's confidential information because of their position as police officers.

## 2.  Deprivation of Privacy Rights

The Plaintiff alleges that the confidential report purportedly accessed and distributed by the Defendants contained a psychological evaluation, as well as information on his social, financial, medical and family history.  [Dkt. #138, Compl., ¶ 22-23].  "As a general matter, there exists in the United States Constitution, a right to privacy protecting the individual interest in avoiding disclosure of personal matters." *Matson v. Bd. of Educ. of City Sch. Dist. Of New York*, 631 F.3d 57, 63-64 (2d Cir. 2011) (internal quotation marks omitted)(quoting *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1999)).  This right to privacy has been more precisely defined as a right to confidentiality and it encompasses protection of personal health information. *Id.* at 63-64.  The extent of the privacy right varies with the nature of the medical condition, affording greatest protection for those conditions which are "excruciatingly private and intimate," such as a diagnosis as HIV positive. *Id.* at 64 (citing *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999)).  The right of privacy has also been recognized as providing protection against the disclosure of personal financial information.  *Doe*, 15 F.3d at 267 (discussing *Barry v. City of New York*, 712 F.2d 1554 (2d Cir. 1983), *cert. denied*, 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983) and *Eisenbud v. Suffolk County*, 841 F.2d 42 (2d Cir. 1988)).

Plaintiff's allegation that the Defendants accessed and disseminated his background report plausibly alleges a violation of his right to privacy as the information purportedly accessed and disseminated included personal medical information in the form of a psychological evaluation, along with personal and

confidential financial and familial information. [Dkt. #138, Compl., ¶ 22-24].

Construing these facts to be true, Plaintiff has sufficiently plead a claim for

deprivation of privacy rights. Thus, the motions to dismiss Counts 1, 2 and 3

alleging a deprivation of privacy rights under § 1983 against Defendants Soto,

McNeil and Farmer in their individual capacities is DENIED.

### 3. Deprivation of Equal Protection

In Counts 5, 6, and 7, Plaintiff alleges "class of one" equal protection

claims against Defendants Soto, McNeil and Farmer in their individual capacity.

The Equal Protection Clause of the Fourteenth Amendment "is essentially a

direction that all persons similarly situated should be treated alike," *City of

Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (citing *Plyler v.

Doe*, 457 U.S. 202, 216 (1982). The Equal Protection Clause mandates that no state

shall "deny to any person within its jurisdiction the equal protection of the laws."

U.S. Const. Amend. XIV, § 1.  "The equality at which the 'equal protection' clause

aims is not a disembodied equality. The Fourteenth Amendment enjoins 'the

equal protection of the laws', and laws are not abstract propositions."  *Griffin v.

Illinois*, 351 U.S. 12, 21 (1956).  Thus, the Plaintiff must allege that some

administrative or legislative act or regulation denied him the equal protection of

the law. *See Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 597

(2008)(summarizing the scope of the Equal Protection Clause as applying to

administrative and legislative acts). Similarly, state practices, common law and

municipal ordinances have also been recognized as potentially in contravention

of the Equal Protection Clause. *See, e.g., Nashville, C. & St. L. Ry. v. Browning,*

310 U.S. 362, 369 (1940) (holding that "settled state practice" can constitute state "law" for the purposes of the Equal Protection Clause); *In re Asbestos Litigation*, 829 F.2d 1233 (3rd Cir. 1987) (holding state common law precedent as decided by New Jersey Supreme Court is "law" within meaning of the Equal Protection Clause); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 173 (holding that town ordinances can offend the Fourteenth Amendment).

In this case, the conduct complained of is entirely outside the scope of the Equal Protection Clause.  The Plaintiff has not alleged the discriminatory application of any regulation, ordinance, law, or settled state practice, and the Court is not aware of any such regulation, ordinance, law or settled state practice authorizing the access and disclosure of personal confidential information contained in a background report submitted as part of an application for municipal employment.  Defendants' motions to dismiss Counts 5, 6 and 7 against Defendants Soto, McNeil and Farmer in their individual capacities are thus GRANTED.

### 4.   Deprivation of Freedom of Association

In Counts 9, 10 and 11, Plaintiff alleges claims of deprivation of freedom of association against Defendants Soto, Farmer and McNeil in their individual capacities, asserting that the Defendants deprived him of his freedom to associate with his brother, Mayor James Miron. A constitutionally protected freedom of association exists in two distinct contexts: a right to associate with others in intimate relationships and a right to associate with others for purposes

of expressive conduct and free speech.  *See Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984).

The right to intimate association is the applicable aspect in this case as his claim is predicated upon his relationship with his brother and not their expression. The Supreme Court expounded that the justification for a protection for the right to intimate association is the understanding that "certain kinds of personal bonds have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs; they thereby foster diversity and act as critical buffers between the individual and the power of the State." *Id.* at 618-619 (citations omitted). The Supreme Court recognized that associations warrant varying degrees of protection, with close family relationships involving "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life," evincing the strongest need for protection. *Id.* at 619-20.

The sibling relationship is one long recognized as warranting protection. In *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002), the Second Circuit recognized that "husband/wife and parent/child relationships are obviously among the most intimate" and held that a plaintiff's relationships with his father and siblings, although he did not live with them, "were of such an intimate nature as to warrant the highest level of constitutional protection." 305 F.3d at 136 (citing *Rivera v. Marcus*, 696 F.2d 1016, 1024-25 (2d Cir. 1982). The Second Circuit further instructed that "[t]o determine whether other familial relationships are protected,

one must, according to this formulation, assess such factors as cohabitation and the precise degree of kinship." *Id.* at 135.

Varying standards exist to determine if a violation of the right of intimate association has occurred. *See Adler v. Pataki*, 185 F.3d 35, 43-44 (2d Cir. 1999) (collecting cases). Some courts have suggested that the right of intimate association is violated where "the challenged action has the likely effect of ending the protected relationship." *See id.*, at 43 (citing *Lyng v. International Union, UAW*, 485 U.S. 360, 364-66 (1988) (holding that a statute prohibiting a household from participating in a food stamp program while any of its members was on strike did not violate the strikers' right to associate with their families because it did not prohibit them from dining with their families or interfere with family living arrangements). Other courts have held that a right of intimate association is violated only if the purpose of the challenged regulation was to affect the purportedly intimate relationship. *See Adler*, 185 F.3d at 43 (citing *Califano v. Jobst*, 434 U.S. 47, 54 (1977)).  Another category of cases has considered a right of intimate association to be violated where the burden to intimate association "is arbitrary or an 'undue intrusion' by the state into the marriage relationship." *Id.* at 43-44 (citing *Adkins v. Bd. Of Educ. of Magoffin County, Ky.*, 982 F.2d 952 (6th Cir. 1993)).

In *Patel*, the Second Circuit emphatically rejected an assertion that a purported intrusion or violation of the right to intimate association must meet a threshold level of severity in order to trigger constitutional protection. The Second Circuit found this approach to be inconsistent with the Supreme Court's

opinion in *Roberts'* which held that "constitutional protections for associational interests are at their apogee when close family relationships are at issue." *Patel*, 305 F.3d 130 at 137 (citing *Roberts*, 468 U.S. at 619-20). The Second Circuit also rejected the assertion that "a challenged action must be directed at a protected relationship for it to infringe on the right of intimate association," stating that no such standard had ever been articulated by the Second Circuit. *Id.* The *Patel* court also declined to adopt a balancing test utilized by the 10th Circuit in which the strength of the associational rights at issue are weighed against the defendant's interest in engaging in the conduct which allegedly violated such associational rights.

Therefore, in evaluating a claim of a violation of the right of intimate association within the Second Circuit, courts must first ascertain the level of protection to be afforded to the associational interest at issue, recognizing that immediate familial relations receive the highest level of constitutional protection, and assessing any other associational interests by considering factors of cohabitation and the precise degree of kinship. Courts must then consider the severity of the purported violation of such associational interest, recognizing that the degree of constitutional protection afforded to the associational interest will govern the level of intrusion to be tolerated.

Applying the aforementioned analysis to the current case, the Court finds that Plaintiff has sufficiently stated a claim for a violation of the right of intimate association. Plaintiff has alleged that Defendants actions constituted "an intentional effort to deprive Plaintiff of his freedom of familial association as it

relates to his brother, James Miron." [Dkt. #138, ¶¶ 115, 123, 131]. In fact, the "direct consequence[s]" of the Defendants' actions was the loss of an employment opportunity at the police department, along with "economic damages, emotional distress, damage to personal and professional reputation, loss of enjoyment of life, loss of enjoyment of profession, loss of employment opportunity, embarrassment and humiliation" and attorney's fees. Id. at ¶¶ 116-17, 125-26, 132-33. Plaintiff has alleged facts allowing the plausible inference that the Defendants' conduct was in retaliation for his relationship with his brother. Specifically, Plaintiff alleged that his confidential information was accessed and disseminated by the Defendants and given to his brother's political rival who in turn disseminated it to the press. He further alleges that he was deprived of a position on the police force because of his relationship with his brother. In *Adler v. Pataki,* the court held that an employee allegedly fired in retaliation for wife's discrimination suit could maintain §1983 action. 185 F.3d 35, 44 (2d Cir.1999) Thus the dissemination of personal information to a political rival of the Plaintiff's brother which resulted in his denial of a position on the police force sufficiently asserts a violation of the right to intimate association.

Thus, the Motions to Dismiss Counts 9, 10 and 11 for deprivation of freedom of association against Defendants Soto, Farmer and McNeil in their individual capacities are DENIED.

C.   Conspiracy Under § 1985

In Counts 13, 14 and 15, Plaintiff alleges that Defendants Soto, Farmer and McNeil conspired to deprive him of his constitutional rights in violation of 42

U.S.C. §1985. "In order to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8 v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (citation omitted).

After examining the legislative history and structure of § 1985, the Supreme Court clarified that the statute is not intended to "apply to all tortious, conspiratorial interferences with the rights of others." *Griffin v. Beckenridge*, 403 U.S. 88, 101 (1971). The statute requires proof of an intent to deprive a person of the equal protection of the laws or intent to deprive equal privileges and immunities under the laws, meaning that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Id.* at 102; see also *Cine SK8*, 507 F.3d at 791 (recognizing requirement of racial or class-based discriminatory language). A complaint must allege more than "conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights" to survive a motion to dismiss. *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999).

The Plaintiff has failed to sufficiently allege a conspiracy under § 1985 for two reasons. First, the Plaintiff's allegations are wholly conclusory. The Plaintiff has alleged that Defendants  conspired with each other "to deprive Plaintiff of his unspecified constitutional rights in violation of 42 U.S.C. § 1985(3)" with "evil

motive or intent and with reckless or callous indifference to Plaintiff's federally protected rights," entering into the conspiracy "for the purposes of personal , professional, or political gain as a result of their animus toward Plaintiff's brother, who was the Mayor of Stratford at all times relevant to this complaint."  [Dkt. #138, Compl., ¶¶ 141, 143; 148, 150; 155, 157].  Such allegations are wholly conclusory, stating only the bare essentials of a conspiracy between the Defendants and setting forth the purported goal of the conspiracy, absent any factual details or enhancement. See *Iqbal*, 556 U.S. at 678 (holding that the pleading standards set forth in Fed. R. Civ. P. 8 require more than a mere recitation of the elements of the cause of action or naked assertions devoid of factual enhancement).

Second, Plaintiff's § 1985 claims fail because the Plaintiff has failed to allege that the Defendants' conspiratorial conduct was driven by any racial or class-based animus held towards him. *See Griffin*, 403 U.S. at 102; *see also Cine SK8*, 507 F.3d at 791.  Although Plaintiff claims that he is part of the protected class of the "Miron family," Plaintiff did not offer any authority to substantiate this argument, and the Court is unaware of any jurisprudence to support the proposition that individual family units may be recognized as protected classes.

Thus, Defendants' motions to dismiss Counts 13, 14 and 15 alleging a conspiracy in violation of 42 U.S.C. § 1985 are hereby GRANTED.

D.    <u>Civil Conspiracy</u>

In Claims 25, 26, and 27, Plaintiff alleges claims of a civil conspiracy against Defendants McNeil, Soto and Farmer, respectively.  Specifically, Count 25

is captioned "Civil Conspiracy (as to Defendant McNeil); Count 26 is captioned "Civil Conspiracy (as to Defendant Soto); and Count 27 is captioned "Civil Conspiracy (as to Defendant Farmer). However, in an apparent clerical error, the factual allegations accompanying Counts 26 and 27 refer to Defendant McNeil, and not to Defendants Soto and Farmer, as their captions would suggest. The Motions to Dismiss filed by Defendants Soto and Farmer have raised this error, asserting that the lack of factual allegations against them on these claims warrant their dismissal. Plaintiff requests leave to amend the operative complaint to correct the factual allegations accompanying Counts 26 and 27 to name Defendants Soto and Farmer, consistent with the captions labeling each count.

Fed. R. Civ. P. 15(a)(2) provides that once the time frame for amendments to the complaint as a matter of course has expired, a party must either obtain written consent of the opposing party, or seek leave of the court. The rule states that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  The rule within the Second Circuit "is to allow a party to amend its complaint unless the nonmovant demonstrates prejudice or bad faith." *City of New York v. Group Health Inc.*, 649 F.3d 151, 157 (2d Cir. 2011) (citation omitted).

Given the captions of Counts 26 and 27 clearly indicating that such counts allege claims of civil conspiracy against Defendants Soto and Farmer, it can hardly be said that Defendants would be prejudiced by the requested amendment. Accordingly, Counts 26 and 27 are DISMISSED without prejudice to the Plaintiff filing an amended complaint within twenty one days of the date of this order to correct the scrivener's error.

E.     <u>Soto, Farmer and McNeil's Liability in their Official Capacity</u>

As discussed above, Plaintiff's Complaint does not differentiate between the facts applicable to each Defendant; rather the same factual allegations are set forth for each count as against all three Defendants.  Counts 1, 2 and 3 allege a deprivation of privacy rights under 42 U.S.C. § 1983.  Counts 5, 6 and 7 allege a deprivation of equal protection under 42 U.S.C. § 1983.  Counts 9, 10 and 11 allege a deprivation of freedom of association under § 1983.  Counts 13, 14 and 15 allege a civil conspiracy in violation of 42 U.S.C. § 1985. Absent particularized facts as to each Defendant, the Court will consider the claims against the Defendants in their official capacity as they relate to all three Defendants.

1.  <u>§ 1983 Claims</u>

Whereas claims raised against government officials in their individual capacity seek to impose personal liability, "[o]fficial capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690, n.55).  Accordingly, "Section 1983 claims against municipal employees are treated as claims against the municipality itself." *See Neri v. Town of Newtown*, 573 F.Supp.2d 661, 671 (D.Conn. 2008) (citing *Patterson v. Cnty. of Oneida*, 375 F.3d 206 (2d Cir. 2004).

Therefore, where the Court, as previously discussed, finds that Plaintiff's allegations of municipal liability against the Town of Stratford fail to state a claim by failing to plausibly allege that the purported violations of his right to privacy,

equal protection, and freedom of association were committed through a policy, custom, or practice of the Town, such allegations necessarily fail to state a claim against Defendants Soto and McNeil in their official capacities as well. *See supra* p. 5 – 8.

The last method through which a plaintiff may plausibly allege liability on behalf of a municipal employee in his official capacity is by asserting that the defendant, as a municipal policymaker, made a final decision that caused a violation of the plaintiff's constitutional rights. *Zherka v. DiFiore*, 412 Fed.Appx. 345, 348 (2d Cir. 2011). The defendant-policymaker must be the "moving force" behind the conduct that ultimately deprived a plaintiff of constitutional rights. *Monell*, 436 U.S. at 694.

Plaintiff's §1983 claims against Defendants Soto and Former fail to allege that either Defendant had final decision-making authority as any to Town policies. At most, the Complaint alleges that Soto was a Lieutenant in the police department [Dkt #138, Compl., ¶ 9] and that McNeil was a Captain in the police department  [*Id.* at ¶ 10], but fails to allege that these positions involved any type of final decision-making authority.  Absent any factual allegations asserting that Soto or McNeil made, or had the power to make, any decisions concerning policies regarding accessing and disclosing confidential information within the police department, Plaintiff cannot rely on this avenue of asserting liability against Defendants Soto or McNeil in their official capacity. Further, while the Plaintiff alleges that the Defendants were reinstated without any disciplinary consequence for their actions, these isolated incidents do not constitute an

official policy and the reinstatement did not cause the harm of which the Plaintiff complains. Thus, Defendants motions to dismiss Counts 1, 2, 5, 6, 9, and 10, alleging violations of §1983 by Defendants Soto and McNeil in their official capacity are hereby GRANTED.

### 2. § 1985 Claims

The Court dismisses Counts 13 and 14 against Defendants Soto and McNeil  for conspiracy in Defendants' official capacity under § 1985 for the same reasons that the Counts fail against them in their individual capacities.  *See supra* p. 16-20.

### IV.

### V. Conclusion

For all the foregoing reasons, Defendant's motion to dismiss is GRANTED in part, and DENIED in part. Specifically, Counts 1, 2, 5, and 6 are dismissed against Defendants Soto and Farmer in their official capacities. Counts 1, 2, and 3 are will proceed as to Defendants Soto, Farmer and McNeil in their individual capacities. Counts 5, 6, and 7 are dismissed against Defendants Soto, Farmer, and McNeil in their individual capacities. Counts 9, 10 and 11 shall proceed against Defendants Soto, Farmer and McNeil in their individual and official capacities.  Counts 4, 8, and 12 against the Town of Stratford and Stratford Police Department are dismissed. Counts 13, and 14 are dismissed against Defendants Soto and McNeil in their individual and official capacities. Count 15 is dismissed against Defendant Farmer in his individual capacity, but will proceed in his official capacity. Counts 16 through 24 will proceed.  Plaintiff is hereby granted leave to

amend Counts 26 and 27 to state factual allegations pertaining to Defendants

Soto and Farmer. Counts 28 through 30 will proceed.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: July 24, 2012